# EXHIBIT A

CORPORATE CREATIONS®
Registered Agent • Director • Incorporation
**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

March 27, 2026

Club Med Sales, Inc.
Eileen Kett Vice President & General Counsel
Club Med Management Services, Inc.
6505 Waterford District Drive
Miami FL 33126

# SERVICE OF PROCESS NOTICE

Item: 2026-1

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| | | | |
|---|---|---|---|
| 1. | **Entity Served:** | Club Med Sales, Inc. | |
| 2. | **Title of Action:** | Melissa Erwin, on her behalf and on behalf of others similarly situated vs. Club Med Sales Inc | |
| 3. | **Document(s) Served:** | Class Action Complaint<br>Exhibit A<br>Jury Demand<br>Summons | |
| 4. | **Court/Agency:** | Snohomish County Superior Court | |
| 5. | **State Served:** | Delaware | |
| 6. | **Case Number:** | 26-2-02997-31 | |
| 7. | **Case Type:** | Violation | |
| 8. | **Method of Service:** | Hand Delivered | |
| 9. | **Date Received:** | Friday 03/27/2026 | |
| 10. | **Date to Client:** | Friday 03/27/2026 | |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | See Notes | CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Samuel J. Strauss<br>Chicago, IL<br>872-263-1100 | |
| 13. | **Shipped To Client By:** | Email Only with PDF Link | |
| 14. | **Tracking Number:** | | |
| 15. | **Handled By:** | 081 | |
| 16. | **Notes:** | Please review the enclosed documents in order to calculate the response due date. | |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

ELECTRONICALLY FILED
3/23/2026 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-02997-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

CLUB MED SALES, INC.,

Defendant.

Case No.: 26-2-02997-31

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Melissa Erwin, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Club Med Sales, Inc., ("Club Med") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident." RCW



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

19.190.020(1)(b).

3. Defendant Club Med engages in the precise activity which CEMA prohibits.

4. Club Med engages Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. Through this deceptive time-sensitivity, Club Med falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Club Med's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Snohomish County under RCW 4.12.020(3) because Plaintiff's cause of action or some part of it arose in Snohomish County.

## III. PARTIES

10. Plaintiff Melissa Erwin is a resident of Snohomish County, Washington.

11. Defendant Club Med Sales, Inc., is a Delaware corporation with its principal place of business at 6505 Blue Lagoon Drive, Suite 225, Miami, FL 33126.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

### B. The subject lines of Club Med's marketing emails make false time scarcity claims.

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture*, *supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39. These false time scarcity claims are a staple of Club Med's email scheme to compel consumers to purchase its products.

40. Club Med is a hospitality and travel company offering all-inclusive vacations at various properties throughout the world. U.S. consumers may book their stays using Club Med's



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

website, www.clubmed.us.

41. To advertise the properties, vacations, and other offers available on www.clubmed.us, Club Med sends spam emails to consumers.

42. **Urgent Spam Emails.** Unfortunately for those recipients, Club Med regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

43. Club Med has tailored its approach to fit a variety of offers, including promotion extensions. In these examples, Club Med sends consumers emails to advertise an offer, promotion, or sale. Then, it uses the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from Club Med's website. Finally, once the originally advertised "deadline" has passed, Club Med knowingly extends the promotion to a new end date.

44. While Club Med may present these extensions as though they are a favor or some unexpected blessing to consumers, they are anything but. By pairing false time pressures with surprise extensions—which are only disclosed once the original promotion has ended—Club Med compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions.

45. This misleading marketing strategy allows Club Med to maximize sales during both the initial promotion, as well as the subsequent extension.

46. A 2024 promotion offering "Sunkissed Escapes Up to 40% Off" provides an apt example of this strategy at work.

47. First, consumers receive emails advertising the promotion. For instance, on January 2, 2024, Club Med sent one of several emails concerning the "up to 40% off" offer. The email was



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

titled, "Kickstart 2024 with Spring Savings—Ending Soon!" while text within the message warned that the "Offer ends on January 8th!" The body of the email also included a countdown graphic detailing the days, hours, minutes, and seconds remaining before the offer's expiration.

48. For its next step, Club Med uses the subject lines of its follow-up emails to assert false time pressures on recipients. Such headlines urge consumers to purchase from Club Med's website by warning them that the offer is coming to an end.

49. Club Med did so, regarding its "up to 40% off" promotion, on January 8, 2024. An email sent that morning touted an urgent subject line and stated a clear deadline: "🕒 New Year Sale: Last Day for 40% Savings[.]" Text within the email claimed that it was the "Last Call for Savings" and featured an updated countdown graphic indicating that there were only hours remaining for the promotion.

50. Despite the unambiguous deadline communicated to consumers in the January 8, 2024, subject line, the special pricing offer did not end on the advertised date.

51. In the final stage of its scheme, Club Med replaces the advertised deadline with the real deadline, purporting to extend the life of the promotion. For the "Up to 40% Off" offer, Club Med announced the "extension" on January 9, 2024, in an email titled: "2024 Spring Savings—Extended!" The heading confirmed that the promotion would continue beyond the deadline that Club Med previously, and unambiguously, communicated to consumers in its January 8, 2024, subject line. Text within the January 9 email also provided a new deadline for the promotion, noting that the offer would continue for two additional days.

52. Thus, after warning consumers that the opportunity was ending, Club Med extended the sale, thereby proving the falsity of its January 8, 2024, subject line. Consumers in receipt of the January 8 email were not at risk of missing the offer because Club Med did not end the sale on



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

January 8, as it originally advertised. The false deadline and the false time scarcity presented in the January 8 subject line are key elements in Club Med's cohesive marketing strategy. These tactics are a coordinated marketing strategy designed on the front end and meant to compel consumers to purchase travel from Club Med's website.

53. Club Med returned to consumers' inboxes later that month, embarking on a new round of deception.

54. On January 25, 2024, it sent consumers an email with the subject line: " Flash Sale: 50% on Spring & Summer Escapes[.]" The purported "flash sale" entailed "50% off" and "Up to $500 savings on Deluxe & Suites[.]" The body of the email reiterated that the savings were a "limited-time offer!" and included another timer counting down the days, hours, minutes, and seconds until the promotion's end.

55. Consistent with its typical practice, Club Med transmitted an email emphasizing the sale's impending deadline on January 29, 2024. The email contained the subject header: "Last Day to Save 50% OFF ALL Spring and Summer Dates[.]" Inside, the email layered additional time pressures on its recipients. Bold text urged consumers to "Act Now!" and warned that the "Sale Ends Today[.]" A graphic within the email repeated the deadline from its title, "Last Day[,]" while an updated countdown timer indicated that consumers had only hours left to access the offer.

56. Contrary to the January 29 subject line, the "flash" sale began to resemble a slow burn. The opportunity for special pricing would last beyond the advertised deadline, as confirmed in a January 30, 2024, email titled: " Flash Sale Extended: TWO more Days to Save!" Clearly, the time scarcity claim that Club Med sent to consumers in its January 29 subject line was false. The promotion did not end as advertised.

57. By filling consumers' inboxes with misinformation about important terms, such as



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

deadlines, Club Med ensures that email recipients lack the accurate details they need to make educated buying decisions.

58. Club Med used the same strategy when advertising another alleged flash sale in April, 2024.

59. On April 3, 2024, Club Med sent consumers an email promoting the offer in its subject line: " Flash Sale: 50% Off + Kids under 16 stay Free[.]" Consumers who opened the email would be met with text explaining that the sale was all-inclusive stays at Club Med properties in Mexico, the Caribbean, Dominican Republic, and Canada. The body of the email further warned consumers to, "Hurry! This limited time offer ends on April 8th" and provided a countdown graphic reflective of the April 8 deadline.

60. Once April 8, 2024, arrived, Club Med emphasized the upcoming end of its "flash" sale in an email with the subject line: " Last Day! 50% Off + Kids under 16 stay Free[.]" Text within the email reiterated that it was consumers' "Final call" to book one of the advertised vacations. However, the email's text, much like its title, also featured false information.

61. After making its misrepresentations regarding the purported end of the flash sale, Club Med revealed the real deadline on April 9, 2024, in an email titled: " Flash Sale Extended: 50% Off + Complimentary Stay for kids under 16[.]" The message confirmed that the subject line sent on April 8 was false and stated that the sale would actually end on April 10, as confirmed by an updated and accurate countdown timer.

62. Another example arose in the context of a flash sale conducted in July 2024.

63. On July 17, 2024, Club Med sent an email with the subject line: " Flash Sale 50% Off + Up to $400 Extra Savings[.]" The message announced the special pricing available for stays at resorts in North America and urged consumers to "Hurry! This limited time deal ends



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

on July 22." Per usual, Club Med included a countdown timer within the email, reflecting the July 22 deadline.

64. A few days later, on July 19, 2024, Club Med transmitted another email emphasizing the July 22 end date. The email was titled: " ⚡ Last Days ⚡ : 50% OFF + Up to $400 extra savings[.]" The countdown timer was updated to reflect the roughly 3 and a half days remaining until the sale's advertised deadline with text stating it was consumers' "last chance to save." The email's preview text further reiterated that the sale was in its "final countdown[.]"

65. However, July 22, 2024, was not the last day of the sale. In fact, the "Last Days" presented in the July 19, 2024, email and subject line were not the last days at all.

66. Proof that the July 22 subject line communicated a false deadline arrived in consumers' inboxes on July 23, 2024, in an email featuring the headline: " 💧 Extended Time to Save: 50% Off + Up to $400 extra savings[.]" The email stated that the offer would then run until July 24. Thus, the true "last days" for the "flash" sale would not arrive until the false deadline had passed.

67. Club Med started 2025 with the same deceptive techniques. Consumers received emails presenting a "40% Off" promotion with an advertised deadline of January 13, 2025. Yet, the New Year Sale did not end on January 13, 2025. Consistent with its typical strategy, Club Med advertised the new promotion, used the subject line of a follow-up email to emphasize a false deadline, then "extended" the sale to its true end date. The subject lines used to implement the scheme demonstrate Club Med's deceptive campaign:

a. January 7, 2025: "Kickstart 2025 with Spring Savings—Ending Soon!"

b. January 13, 2025: "🕒 New Year Sale: Last Day for 40% Savings[.]"

c. January 14, 2025: "2025 Spring & Summer Savings—Extended!"



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

68. Despite the unambiguous deadline that Club Med communicated in its January 13, 2025, subject line, it never intended to conclude the promotion on that date. The January 14, 2025, email confirmed that the January 13 subject line was false and that the offer would be available until January 15, 2025.

69. Club Med repeated its trick the following month. Consumers received emails promoting a "Flash Sale" with 50% off pricing at specified Club Med destinations. According to information contained in Club Med emails and the subject line of its February 3, 2025, email, the opportunity would end on February 3. However, February 3 was not the true deadline for the special pricing. In fact, February 3 was not the "Last Hours to Save" nor was it the last day of the sale. The real final day and hours for the flash sale occurred on February 5, 2025. The subject lines used in the emails advertising the sale demonstrate the deceptive routine:

a. January 30, 2025: " Flash Sale: 50% on Spring & Summer Escapes[.]"

b. February 3, 2025: "Last Hours to Save 50% OFF ?? ALL Spring and Summer Dates[.]"

c. February 4, 2025: " Flash Sale Extended: TWO more Days to Save!"

70. Club Med used the guise of a "flash" sale to mislead consumers in May 2025 as well. Again, consumers' inboxes were subjected to the same deceptive process. Club Med 1) sent emails advertising the sale and presenting a false deadline, 2) sent an email with a subject line pressuring consumers to book quickly because the offer was coming to an end, and 3) announced the promotion's true end date in an email sent shortly after the advertised deadline had passed. The subject lines sent to consumers reveal the misleading strategy:

a. May 22, 2025: "Memorial Day Flash Sale: Up to 50% Off[.]"

b. May 27, 2025: "Last Chance: Memorial Day All-Inclusive Deals [.]"



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

c. May 28, 2025: "Guess What ... Two more days to save up to 50% OFF[.]"

71. Both the May 22 and May 27 emails indicated that the "flash" sale was a "Limited-time offer!" which would end on May 27 and featured a countdown timer reflective of that deadline. Yet, as the May 28 email proved, the May 27, 2025, subject line was false. The "flash" sale did not end until two days later.

72. Within two months' time, Club Med paired a false deadline with a surprise "extension" yet again. On July 28, 2025, it sent an email pressuring consumers to act before the end of a 50% off flash sale. The message was titled: "Last Chance! 50% Flash Sale Ends Tonight[.]" A graphic within the email emphasized that it was the "LAST DAY" for the discount on stays at certain "Beach and Mountain Resorts." The body of the email also featured a countdown timer reflecting the advertised end date and repeated the warning touted in the email's subject line: "Sales End Tonight."

73. Yet, the sale did not end on July 28, 2025. An email transmitted the following day, on July 29, 2025, and titled, "Flash Sale Extended: 2 More Days to Save Up to 50% Off[,]" confirmed that the sale was ongoing and revealed its true deadline. Thus, the July 28, 2025, subject line was false and the "flash" sale would continue until July 30, 2025.

74. Another example of Club Med's scheme arose during a 50% off promotion in September 2025.

75. An email sent on September 22, 2025, warned consumers of the promotion's upcoming deadline in its title: "Clock's Ticking ⏰ 50% OFF Ends Tonight [.]" A graphic inside the email proclaimed that it was the "LAST DAY" to obtain the savings on stays at select Club Med destinations while a countdown timer indicated that the sale would last "until midnight."

76. Yet, the very next day, Club Med transmitted an email which proved that the



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

September 22, 2025, subject line was false and provided the sale's true deadline. The September 23, 2025, email featured the subject line, "50% Off Flash Sale: EXTENDED!" while text within the email confirmed that the sale "has been extended for TWO more Days!"

77. Club Med concluded the year in much the same manner. During a Black Friday Sale in December, the company again used its marketing emails to mislead consumers concerning the timing of its promotions.

78. On December 1, 2025, it transmitted an email with the subject line: " Final Hours to Save on Our Biggest Sale of the Year[.]" According to the email, the offer allowed consumers to receive 50% off stays at Club Med properties. The email was also crammed with false time pressure claims. A graphic within the body of the message stated it was the "Last Day." Below the graphic, a countdown timer reflected the time remaining in the promotion. To the left of the timer, large text claimed the Black Friday offer was the "Biggest Sale of the Year – Final Hours[.]" Then, print appearing below the graphic further emphasized, "Today is the Last Day to lock in our biggest sale of the year!" Finally, the email also warned consumers, "Don't miss your chance, these exclusive savings end today." While the message was replete with clear reminders as to the sale's conclusion, none of those representations were true.

79. On December 2, 2025, Club Med sent consumers an email announcing the real deadline. The message was titled, " Travel Tuesday Surprise: Black Friday Extended!" and confirmed the offer would last until December 4, 2025. Thus, the December 1, 2025, subject line, communicated a false deadline to consumers.

80. Club Med has continued to deploy email subject lines to advance its deceptive marketing strategy in 2026.

81. On January 12, 2026, it transmitted an email titled: "Semi-Annual Sale Ends Today:



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

50% Off & Up to $400 Instant Savings[.]" A graphic inside the email proclaimed it was the "LAST DAY" of the advertised discount for stays at Club Med properties. Text below the graphic also announced that it was the "Last call for semi-annual savings" and included a countdown timer reflecting the alleged January 12 deadline.

82. True to its typical, yet false, form, the end date presented by Club Med was untrue. The semi-annual sale did not conclude on January 12. An email sent on January 13, 2026 was titled, "Offer Extended: One more day[] to enjoy 50% Off Your All-Inclusive Escapes[,]" and confirmed the deal did not end on January 12 despite the unambiguous deadline communicated in the January 12, 2026 subject line.

83. As the subject lines of its marketing emails demonstrate, Club Med employs a strategy where it pressures consumers to make purchases from its website by falsely representing the limited availability of its offers.

84. These and other examples of Club Med's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C. Club Med knows when it sends emails to Washington residents.**

85. A sophisticated commercial enterprise, like Club Med, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

86. First, the sheer volume of email marketing that Club Med engages in put it on notice that Washington residents would receive its emails.

87. Second, Club Med may obtain location information tied to email addresses when consumers make purchases from Club Med through digital platforms, or otherwise self-report such



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

information to Club Med.

88. Third, Club Med may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Club Med emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

89. Fourth, Club Med may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

90. Fifth, Club Med may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

91. Sixth, Club Med may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

92. It is thus highly probable that a seller of Club Med's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. Club Med violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

93. Club Med has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

94. For example, Plaintiff received emails containing false or misleading subject lines



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

sent by Club Med as described above in Section B, including:

a. The May 27, 2025, email titled, "Last Chance: Memorial Day All-Inclusive Deals" as described at paragraphs 70 and 71 above.

b. The July 28, 2025, email titled, "Last Chance! 50% Flash Sale Ends Tonight[,]"as described at paragraph 72 above.

c. The September 22, 2025, email titled, "Clock's Ticking ⏰ 50% OFF Ends Tonight" as described at paragraph 75 above.

d. The December 1, 2025, email titled, " ⚡ Final Hours to Save on Our Biggest Sale of the Year [,]" as described at paragraph 78 above.

95. The subject lines of these emails are false or misleading in violation of CEMA as described above.

96. These subject lines contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

97. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

98. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

99. The Class Period extends from the date four years before this Class Action



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

Complaint is filed to the date a class certification order is entered in this action.

100. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

101. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

102. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

103. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

104. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

105. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

106. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

107. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

108. Plaintiff incorporates and realleges paragraphs 1–96 above.

109. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

110. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

111. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

meaning of CEMA. RCW 19.190.010(2).

112. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

113. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

114. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**<u>Second Claim to Relief</u>**

**Violation of the Consumer Protection Act, RCW 19.86.020**

115. Plaintiff incorporates and realleges paragraphs 1–96 above.

116. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

117. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

118. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

119. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

120. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

121. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

122. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

123. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

124. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

125. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks the Court to:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

Date: March 23, 2026

/s/ *Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

*** Applications for admission *pro hac vice* forthcoming**

# — EXHIBIT A —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

CLUB MED SALES, INC.,

Defendant.

Case No.: ____________________

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
|---|---|
| 1/8/24 | 🕒 New Year Sale: Last Day for 40% Savings |
| 1/29/24 | Last Day to Save 50% OFF 💧 ALL Spring and Summer Dates |
| 4/8/24 | ⏰ Last Day! 50% Off + Kids under 16 stay Free |
| 7/19/24 | ⚡ Last Days ⚡ : 50% OFF + Up to $400 extra savings |
| 1/13/25 | 🕒 New Year Sale: Last Day for 40% Savings |
| 2/3/25 | Last Hours to Save 50% OFF ?? ALL Spring and Summer Dates |
| 5/27/25 | Last Chance: Memorial Day All-Inclusive Deals |
| 7/28/25 | Last Chance! 50% Flash Sale Ends Tonight |
| 9/22/25 | Clock's Ticking ⏰ 50% OFF Ends Tonight |
| 12/1/25 | ⚡ Final Hours to Save on Our Biggest Sale of the Year |
| 1/12/26 | Semi-Annual Sale Ends Today: 50% Off & Up to $400 Instant Savings |



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

ELECTRONICALLY FILED
3/23/2026 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-02997-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLUB MED SALES, INC.,<br><br>Defendant. | Case No.: 26-2-02997-31<br><br>JURY DEMAND |

Plaintiff Melissa Erwin, by and through her attorneys, individually and on behalf of all others similarly situated, hereby demands a trial by a twelve-person jury in the above-entitled action upon all issues.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: March 23, 2026

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

*** Applications for admission *pro hac vice* forthcoming**

ELECTRONICALLY FILED
3/23/2026 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-02997-31

# CIVIL

26-2-02997-31

## SNOHOMISH COUNTY SUPERIOR COURT
Case Information Cover Sheet (CICS)

**Case Number**________________________ **Case Title** *Erwin v. Club Med Sales, Inc.*

**Attorney Name** Samuel J. Strauss **Bar Membership Number** #46971

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

*Form updated 12/28/2020*

| | | |
|---|---|---|
| ☐ | ABJ | Abstract of Judgment |
| ☐ | ABL | Abusive Litigation |
| ☐ | ALR | Administrative Law Review |
| ☐ | ALRJT | Administrative Law Review-Jury Trial (L&I) |
| ☐ | BAT | Ballot Title |
| ☐ | CHN | Non-Confidential Change of Name |
| ☐ | CBC | Contractor Bond Complaint |
| ☐ | COL | Collection |
| ☐ | CON | Condemnation |
| ☐ | COM | Commercial |
| ☐ | CRP | Pet. for Cert. of Restoration of Opportunity |
| ☐ | DOL | Appeal Licensing Revocation |
| ☐ | DVP | Domestic Violence |
| ☐ | EOM | Emancipation of Minor |
| ☐ | FJU | Foreign Judgment |
| ☐ | FOR | Foreclosure |
| ☐ | FPO | Foreign Protection Order |
| ☐ | HAR | Unlawful Harassment |
| ☐ | INJ | Injunction |
| ☐ | INT | Interpleader |
| ☐ | LCA | Lower Court Appeal – Civil |
| ☐ | LCI | Lower Court Appeal – Infractions |
| ☐ | LUPA | Land Use Petition Act |
| ☐ | MAL | Other Malpractice |
| ☐ | MED | Medical Malpractice |
| ☐ | MHA | Malicious Harassment |
| ☒ | MSC2 | Miscellaneous – Civil |
| ☐ | MST2 | Minor Settlement – Civil (No Guardianship) |
| ☐ | PCC | Petition for Civil Commitment (Sexual Predator) |
| ☐ | PFA | Property Fairness Act |
| ☐ | PIN | Personal Injury |
| ☐ | PRA | Public Records Act |
| ☐ | PRG | Property Damage – Gangs |
| ☐ | PRP | Property Damages |
| ☐ | QTI | Quiet Title |
| ☐ | RDR | Relief from Duty to Register |
| ☐ | RFR | Restoration of Firearm Rights |
| ☐ | SDR | School District-Required Action Plan |
| ☐ | SER | Subdivision Election Process Law Review |
| ☐ | SPC | Seizure of Property-Commission of Crime |
| ☐ | SPR | Seizure of Property-Resulting from Crime |
| ☐ | STK | Stalking Petition |
| ☐ | SXP | Sexual Assault Protection |
| ☐ | TAX | Employment Security Tax Warrant |
| ☐ | TAX | L & I Tax Warrant |
| ☐ | TAX | Licensing Tax Warrant |
| ☐ | TAX | Revenue Tax Warrant |
| ☐ | TMV | Tort – Motor Vehicle |
| ☐ | TRJ | Transcript of Judgment |
| ☐ | TTO | Tort – Other |
| ☐ | TXF | Tax Foreclosure |
| ☐ | UND | Unlawful Detainer – Commercial |
| ☐ | UND | Unlawful Detainer – Residential |
| ☐ | VAP | Vulnerable Adult Protection Order |
| ☐ | VEP | Voter Election Process Law Review |
| ☐ | VVT | Victims of Motor Vehicle Theft-Civil Action |
| ☐ | WDE | Wrongful Death |
| ☐ | WHC | Writ of Habeas Corpus |
| ☐ | WMW | Miscellaneous Writs |
| ☐ | WRM | Writ of Mandamus |
| ☐ | WRR | Writ of Restitution |
| ☐ | WRV | Writ of Review |
| ☐ | XRP | Extreme Risk Protection Order |
| ☐ | XRU | Extreme Risk Protection Order Under 18 |

IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW

**CPA - Consumer Protection Act [xx]**

***Please Note: Public information in court files and pleadings may be posted on a public Web site.***

**APPEAL/REVIEW**

**Administrative Law Review**-Petition to the superior court for review of rulings made by state administrative agencies.
**Appeal of a Department of Licensing Revocation**-Appeal of a DOL revocation (RCW 46.20.308(9)).
**Lower Court Appeal-Civil**-An appeal for a civil case; excludes traffic infraction and criminal matters.
**Lower Court Appeal-Infractions**-An appeal for a traffic infraction matter.

**CONTRACT/COMMERCIAL**

**Breach of Contract**-Complaint involving monetary dispute where a breach of contract is involved.
**Contractor Bond Complaint**-Complaint for claim against a contractor or subcontractor bond.
**Commercial Contract**-Complaint involving monetary dispute where a contract is involved.
**Commercial Non-Contract**-Complaint involving monetary dispute where no contract is involved.
**Third Party Collection**-Complaint involving a third party over a monetary dispute where no contract is involved.

**PROTECTION ORDER**

**Civil Harassment**-Petition for protection from civil harassment.
**Domestic Violence** -Petition for protection from domestic violence.
**Extreme Risk Protection Order**-Petition to restrict ownership, possession, custody or control of a firearm or concealed weapons permit.
**Extreme Risk Protection Order Under 18**-Petition to restrict access, possession, purchase, custody or control of a firearm by a minor.
**Foreign Protection Orders**-Any protection order of a court of the United States, or of any state, territory, or tribal land, which is entitled to full faith and credit in this state.
**Sexual Assault Protection**-Petition under RCW 7.90.020.
**Stalking**- Petition for protection from stalking for victims who do not qualify for a domestic violence protection order. (RCW 7.92.030).
**Vulnerable Adult Protection**-Petition for protection order for vulnerable adults, as those persons are defined in RCW 74.34.020.

**JUDGMENT**

**Abstract Only**-A certified copy of a judgment docket from another superior court, an appellate court, or a federal district court.
**Foreign Judgment**-Any judgment, decree, or order of a court of the United States, or of any state or territory, which is entitled to full faith and credit in this state.
**Judgment, Another County**-A certified copy of a judgment docket from another superior court within the state.
**Judgment, Another State**-Any judgment, decree, or order from another state that is entitled to full faith and credit in this state.
**Tax Warrants** -A notice of assessment by a state agency creating a judgment/lien in the county in which it is filed. (Four types available.)
**Transcript of Judgment**-A certified copy of a judgment from a court of limited jurisdiction to a superior court in the same county.

**OTHER COMPLAINT/PETITION**

**Abusive Litigation**- Request to restrict a current or former intimate partner party from filing abusive litigation for the purposes of harassing, intimidating, or maintaining contact with the other party
**Ballot Title**-Action for review of the ballot title (RCW 29A.36.090).
**Petition for Certificate of Restoration of Opportunity**-Request for order that is intended to facilitate obtaining housing and employment (RCW 9.97.020).
**Change of Name**-Petition for a change of name. If change is confidential due to domestic violence/anti-harassment see case type 5 instead.
**Deposit of Surplus Funds**-Deposit of money or other item with the court.
**Emancipation of Minor**-Petition by a minor for a declaration of emancipation.
**Injunction**-Complaint/petition to require a person to do or refrain from doing a particular thing.
**Interpleader**-Petition for the deposit of disputed earnest money from real estate, insurance proceeds, and/or other transaction(s).
**Malicious Harassment**-Suit involving damages resulting from malicious harassment.
**Minor Settlements**-Petition for a court decision that an award to a minor is appropriate when no letters of guardianship are required (e.g., net settlement value $25,000 or less).
**Petition for Civil Commitment (Sexual Predator)**-Petition for the involuntary civil commitment of a person who 1) has been convicted of a sexually violent offense whose term of confinement is about to expire or has expired, 2) has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial who is about to be released or has been released, or 3) has been found not guilty by reason of insanity of a sexually violent offense and who is about to be released or has been released, and it appears that the person may be a sexually violent predator.
**Property Damage-Gangs**-Complaint involving damage to property related to gang activity.
**Public Records Act**-Actions filed under RCW 42.56.
**Relief from Duty to Register**-Civil action requesting relief from duty to register as a sex offender. Petition can address the registration obligation that arises from multiple cases. RCW 9A.44.142, 9A.44.143.
**Restoration of Firearms Rights**-Petition seeking restoration of firearms rights under RCW 9.41.040 and 9.41.047. *(Eff. 9-2-2014)*
**School District-Required Action Plan**-Petition filed requesting court selection of a required action plan proposal relating to school academic performance.
**Seizure of Property from the Commission of a Crime**-Seizure of personal property that was employed in aiding, abetting, or commission of a crime, from a defendant after conviction.
**Seizure of Property Resulting from a Crime**-Seizure of tangible or intangible property that is the direct or indirect result of a crime, from a defendant following criminal conviction (e.g., remuneration for, or contract interest in, a depiction or account of a crime).
**Subdivision Election Process Review**-Petition seeking court acknowledgement of compliance (RCW 29A.92).
**Subpoenas**-Petition for a subpoena.
**Voter Election Law Review**-Action filed by voters requesting review of Voting Rights Act (RCW 29A.92).

**PROPERTY RIGHTS**

**Condemnation**-Complaint involving governmental taking of private property with payment, but not necessarily with consent.
**Foreclosure**-Complaint involving termination of ownership rights when mortgage or tax foreclosure is involved; ownership is not in question.
**Land Use Petition**-Petition for an expedited judicial review of a land use decision made by a local jurisdiction (RCW 36.70C.040).
**Property Fairness**-Complaint involving the regulation of private property or restraint of land use by a government entity brought forth by Title 64 RCW.
**Quiet Title**-Complaint involving the ownership, use, or disposition of land or real estate other than foreclosure.
**Unlawful Detainer**-Complaint involving the unjustifiable retention of lands or attachments to land, including water and mineral rights.

**TORT, MEDICAL MALPRACTICE**

**Hospital**-Complaint involving injury or death resulting from a hospital.
**Medical Doctor**-Complaint involving injury or death resulting from a medical doctor.
**Other Health Care Professional**-Complaint involving injury or death resulting from a health care professional other than a medical doctor.

**TORT, MOTOR VEHICLE**

**Death**-Complaint involving death resulting from an incident involving a motor vehicle.
**Non-Death Injuries** -Complaint involving non-death injuries resulting from an incident involving a motor vehicle.
**Property Damage Only**-Complaint involving only property damages resulting from an incident involving a motor vehicle.

**TORT, NON-MOTOR VEHICLE**

**Asbestos**-Complaint alleging injury resulting from asbestos exposure.
**Other Malpractice**-Complaint involving injury resulting from other than professional medical treatment.
**Personal Injury**-Complaint involving physical injury not resulting from professional medical treatment, and where a motor vehicle is not involved.
**Products Liability**-Complaint involving injury resulting from a commercial product.
**Property Damages**-Complaint involving damage to real or personal property excluding motor vehicles.
**Victims of Motor Vehicle Theft**-Complaint filed by a victim of car theft to recover damages. (RCW 9A.56.078).
**Wrongful Death**-Complaint involving death resulting from other than professional medical treatment.

**WRIT**

**Writ of Habeas Corpus**-Petition for a writ to bring a party before the court.
**Writ of Mandamus**-Petition for writ commanding performance of a particular act or duty.
**Writ of Restitution**-Petition for a writ restoring property or proceeds; not an unlawful detainer petition.
**Writ of Review**-Petition for review of the record or decision of a case pending in the lower court; does not include lower court appeals or administrative law reviews.
**Miscellaneous Writs**

ELECTRONICALLY FILED
3/23/2026 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-02997-31

IN SSTHE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLUB MED SALES, INC.,<br><br>Defendant.. | Case No.: 26-2-02997-31<br><br>SUMMONS |

**TO: SNOHOMISH COUNTY SUPERIOR COURT CLERK;**
**AND TO: CLUB MED SALES, INC.**

A lawsuit has been started against you in the above-entitled court by Plaintiff Melissa Erwin, by and through her attorney, Samuel J. Strauss of Strauss Borrelli PLLC. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 20 days after the service of this Summons, or 60 days if you were personally served outside the state, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiff is entitled to what he asks for because you have not



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: March 23, 2026

/s/ Samuel J. Strauss

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

*** Applications for admission *pro hac vice* forthcoming**

## NOTICE RE:MILITARY SERVICE MEMBERS

**NOTICE**: State and federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member of the service member's spouse, the service member's minor child, or an individual for whom the service member provided more than on-half of the individual's support for one hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances. **This notice only pertains to a defendant who is a dependent of a member of the national guard or a military reserve component under a call to active service for a period of time of more than thirty consecutive days.** Other defendants in military service also have protections against default judgments not covered by this notice. If you are the dependent of a member of the national guard or a military reserve component under a call to active service for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice.

If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active-duty member of the national guard or reserves, and proceed with the entry of an order of default and/or a default judgment without further proof of your status. Your response to the plaintiff or plaintiff's attorney(s) about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.



MAR 2 7 2026

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com