The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br>CLUB MED SALES, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 2:26-cv-01397-JHC<br><br>**DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTING DATE: AUGUST 14, 2026[1]** |

---

[1] Set by stipulation. *See* Dkt. 8.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................................1

II.   FACTUAL ALLEGATIONS ...............................................................................................2

    A.    The Washington Attorney General Approves of Subject Lines Like Club Med's. ...............................................................................................................2

    B.    *Brown* and These CEMA Lawsuits............................................................................3

    C.    Plaintiff's Claims. ................................................................................................3

III.  LEGAL STANDARDS .........................................................................................................5

    A.    Rule 12(b)(6) Motion to Dismiss.......................................................................5

    B.    The Commercial Electronic Mail Act.................................................................5

IV.   ARGUMENT ...........................................................................................................................6

    A.    Plaintiff Fails to State a CEMA Violation. .......................................................6

        1.    Plaintiff Cannot Sue Over Emails She Never Received. .............................6

        2.    Plaintiff Does Not Plausibly Allege the Emails Had False or Misleading Subject Lines..........................................................................6

            a.    The "Last Chance" and "Last Days" Statements Are Puffery.............................................................................................6

            b.    The Subject Lines Were Neither False nor Misleading. ..................7

        3.    Plaintiff Does Not Sufficiently Allege Club Med Knew or Had Reason to Know Plaintiff's Email Address Belonged to a Washington Resident. ....................................................................................8

    B.    Plaintiff Does Not Allege an Injury to Business or Property as Required under the CPA......................................................................................................10

        1.    Plaintiff Failed to Allege the Requisite Injury to Business or Property...................................................................................................10

        2.    An Interpretation of CEMA that Eliminates the Injury Element Would Impermissibly Rewrite the CPA. ...................................................14

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

|   |   | a. | Courts cannot eliminate the CPA's injury to business or property requirement.........................................................................14 |

|   |   | b. | The legislature cannot eliminate the CPA's injury to business or property requirement by implication............................15 |

|   | C. | Applying *Brown* Retroactively Would Violate Due Process Because Club Med Lacked Fair Notice That Its Conduct Was Unlawful. ...................................17 |

|   | D. | Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It. ...................................................................19 |

|   | E. | Actual and Treble Damages Are Not Available. ...................................................20 |

V.  CONCLUSION...........................................................................................................20

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5, 8, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................5, 8

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)............................................................................................................18, 19

*Chen v. Sur La Table, Inc.*,
    655 F. Supp. 3d 1082 (W.D. Wash. 2023)......................................................................3, 18, 19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .....................................................................................................8

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ..............................................................................................5, 20

*Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*,
    2025 WL 81384 (W.D. Wash. Jan. 13, 2025)............................................................................20

*Gutierrez v. Converse Inc.*,
    2024 WL 2106952 (C.D. Cal. May 2, 2024) ...............................................................................9

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
    754 F. Supp. 2d 1239 (W.D. Wash. 2010)...................................................................................5

*Integra Med Analytics LLC v. Providence Health & Servs.*,
    854 F. App'x 840 (9th Cir. 2021) ...............................................................................................8

*Malibu Media, LLC v. Doe*,
    2014 WL 2615351 (S.D. Fla. May 21, 2014) ..............................................................................9

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .......................................................................................................8

*Paris v. Steinberg & Steinberg*,
    828 F. Supp. 2d 1212 (W.D. Wash. 2011)..................................................................................20

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) ...............................................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................................5

*United States v. AMC Ent., Inc.*,
    549 F.3d 760 (2008)....................................................................................................18

*United States v. Approximately 64,695 Pounds of Shark Fins*,
    520 F.3d 976 (9th Cir. 2008) ......................................................................................18

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ......................................................................................20

*Wilson v. Playtika, Ltd.*,
    349 F. Supp. 3d 1028 (W.D. Wash. 2018)...................................................................10

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ........................................................................................7

**State Cases**

*Amalgamated Transit Union Loc. 587 v. State*,
    142 Wn.2d 183 (2000) ...........................................................................................16, 17

*Anderson v. Valley Quality Homes, Inc.*,
    84 Wn. App. 511 (1997) ..............................................................................................11

*Assoc. Gen. Contractors of Wash. v. State*,
    2 Wn.3d 846 (2024) ...............................................................................................15, 17

*Black v. Cent. Puget Sound Reg'l Transit Auth.*,
    195 Wn.2d 198 (2020) ...........................................................................................15, 16

*Boeing Co. v. State*,
    74 Wn.2d 82 (1968) .....................................................................................................17

*El Centro de la Raza v. State*,
    192 Wn.2d 103 (2018) .................................................................................................16

*Greenberg v. Amazon.com, Inc.*,
    3 Wn.3d 434 (2024) .....................................................................................................17

*Hale v. Wellpinit Sch. Dist. No. 49*,
    165 Wn.2d 494 (2009) .................................................................................................14

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778 (1986) .................................................................................................11

*Hanson v. Carmona*,
    1 Wn.3d 362 (2023) .....................................................................................................14

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Lunsford v. Saberhagen Holdings, Inc.*,
166 Wn.2d 264 (2009) ...............................................................................................17

*Mason v. Mortg. Am., Inc.*,
114 Wn.2d 842 (1990) ...............................................................................................20

*Mielke v. Tacoma RV Ctr., Inc.*,
30 Wn. App. 2d 1038, 2024 WL 1510663 (2024) .....................................................11

*Montes v. SPARC Grp. LLC*,
586 P.3d 999 (Wash. 2026)................................................................................. *passim*

*Race v. Fleetwood Retail Corp. of Wash.*,
116 Wn. App. 1041, 2003 WL 1901274 (2003) .......................................................11

*Sauk Suiattle Indian Tribe v. City of Seattle*,
25 Wn. App. 2d 741, 749 (2023) ................................................................................6

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
64 Wn. App. 553 (1992) ............................................................................................20

*St. Paul Fire & Marine Ins. Co. v. Updegrave*,
33 Wn. App. 653 (1983) ............................................................................................20

*State v. Carter*,
3 Wn.3d 198 (2024) ...................................................................................................17

*State v. Heckel*,
122 Wn. App. 60 (2004) ..........................................................................................3, 5

*State v. Heckel*,
143 Wn.2d 824 (2001) .................................................................................................2

*State v. Wadsworth*,
139 Wn.2d 724 (2000) ...............................................................................................14

*Wash. Educ. Ass'n v. State*,
93 Wn.2d 37 (1980) ............................................................................................16, 17

*Wright v. Lyft, Inc.*,
189 Wn.2d 718 (2017) ....................................................................................... *passim*

**State Statutes**

RCW 19.86.090 ...........................................................................................14, 15, 16, 20

RCW 19.190.020 .............................................................................................................18

RCW 19.190.020(1)...........................................................................................................9

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) - v

RCW 19.190.020(1)(b) ..................................................................................................................5, 13

RCW 19.190.030 ..........................................................................................................................11, 12

RCW 19.190.030(3)...........................................................................................................................11

RCW 19.190.040 ..........................................................................................................................15, 17

RCW 19.190.040(1)........................................................................................................................6, 20

RCW 19.190.060 ...............................................................................................................................12

RCW 19.190.070 ...............................................................................................................................12

RCW 19.190.090(1)...........................................................................................................................14

RCW 28A.58.100(1) ..........................................................................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1, 5

**Constitutional Provisions**

Wash. Const. art. II, § 1 ....................................................................................................................14

Wash. Const. art. II, § 37 .......................................................................................................15, 16, 17

Wash. Const. art. IV, § 1....................................................................................................................14

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) - vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

Plaintiff Melissa Erwin brings this putative class action based on eleven marketing emails Defendant Club Med Sales, Inc. ("Club Med") allegedly sent over a two-year period. She claims Club Med advertised time-limited sales in those emails but later extended some of the sales. It is not illegal to extend a sale beyond its advertised duration. Plaintiff instead attempts to infer that because certain promotions were extended, Club Med must have intended to deceive customers from the outset. Notably, Plaintiff does not allege she ever saw or opened the eleven emails she challenges, let alone that she made any purchase in reliance on them. She nonetheless brings claims under Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") on the theory that the challenged emails' subject lines were "false or misleading" when sent. Club Med respectfully seeks dismissal of Plaintiff's claims with prejudice under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

*First*, Plaintiff fails to plead facts supporting multiple required elements of a CEMA violation. She fails to allege that: (1) she received seven of the emails she challenges; (2) the subject lines were false or misleading because (a) several are inactionable puffery and (b) Plaintiff offers no facts from which to reasonably infer that Club Med did not extend the sales for bona fide market reasons after sending the initial emails; and (3) Club Med had reason to know Plaintiff's email address belonged to a Washington resident.

*Second*, Plaintiff fails to plead injury to "business or property," an essential element of her CPA claim. Even if she alleged she read the subject lines, opened the emails, or purchased a product advertised in them (she does not), that still would not suffice because a plaintiff does not suffer CPA injury when she "purchases—and obtains—the very product []he sought to obtain but does so because the seller misrepresented the product's price history." *Montes v. SPARC Grp. LLC*, 586 P.3d 999, 1001–02, 1004 (Wash. 2026).

*Third*, when Club Med allegedly sent half of the emails, the Washington Attorney General's office publicly advised companies like Club Med that an email's "subject line is NOT deceptive [if] the subject line clearly represents what is being sent." An April 2025 Washington

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 1

Supreme Court ruling flipped the then-prevailing interpretation of CEMA on its head, opening the floodgates to CEMA cases like this one. Due process forbids punishing Club Med for emails that complied with the authoritative read of CEMA at the time Club Med sent the emails.

*Fourth*, Plaintiff's CPA claim fails because it depends entirely on the CEMA claim.

*Finally*, Plaintiff alleges no basis for actual and treble damages under CEMA or the CPA.

## II.    FACTUAL ALLEGATIONS

### A.    The Washington Attorney General Approves of Subject Lines Like Club Med's.

From at least October 2020 through April 2025 (well before the putative class period and challenged emails in this case), the Washington Attorney General's office posted guidance on how to comply with CEMA. Its guidance was clear: if an email's subject line accurately reflected the contents of the email, it was *not* spam. The Attorney General advised:

- "One of the easiest ways to tell if an email violates Washington's spam statute is to take a look at the subject line of the email and compare it to the text of the message."

- "If the subject line is NOT deceptive — in that the subject line clearly represents what is being sent — the email does not likely meet this element of the spam statute."

- "Carefully examine the body of the email message as it relates to the email's subject line."

Declaration of Lauren Rainwater ("Rainwater Decl.") Exs. A & B (old guidance).[2] The Attorney General at no point warned companies that CEMA prohibits subject lines that accurately reflect the contents of the email but may be misleading (or incomplete) in some other way. To the contrary, the Attorney General advised that "the subject line is NOT deceptive … [if] the subject line clearly represents what is being sent." *Id.*

---

[2] Exhibits A through C are judicially noticeable because they appear on the Washington Attorney General's Office webpage, as currently publicly available and as publicly available on October 17, 2020 and April 10, 2025, retrieved using the Internet Archive's Wayback Machine. *See* Rainwater Decl. ¶¶ 2–4; *infra* Section III. Club Med cites Exhibits A through C to show what the Attorney General's Office stated publicly, not for the accuracy of those statements. *See infra* §§ II.B, IV.B; *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 849–50 (N.D. Cal. 2022).

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The Attorney General's advice reflected the general understanding at the time. In 2001, the Washington Supreme Court described, in dicta, the problem CEMA addressed: "When spammers use subject lines 'such as Hi There!, Information Request, and Your Business Records,' it becomes 'virtually impossible' to distinguish spam from legitimate personal or business messages." *State v. Heckel*, 143 Wn.2d 824, 829 (2001) (footnote omitted). In 2004, the Washington Court of Appeals also focused on whether the subject line misrepresented the content of the email, ruling that "the subject line was clearly designed to entice the recipient to open the message … by enticing the recipient to believe that the message might be from a friend or acquaintance or business contact … rather than a commercial advertisement." *State v. Heckel*, 122 Wn. App. 60, 71 (2004). As recently as 2023 courts still interpreted CEMA this way. *See Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1089–90 (W.D. Wash. 2023) ("CEMA is best interpreted to apply only when the subject line is 'false or misleading' with respect to the commercial nature of the email.").

## B.   *Brown* and These CEMA Lawsuits.

In April 2025, the Washington Supreme Court surprised businesses (and ostensibly the Attorney General's office) with its ruling in *Brown v. Old Navy, LLC* that, "[t]o violate [CEMA] subsection (1)(b), an e-mail subject line does not need to deceive consumers about the subject or purpose of the email—it merely needs to contain false or misleading information." 4 Wn.3d 580, 589 (2025). Since *Brown*, the Attorney General has issued new, different guidance, no longer advising that "the subject line is NOT deceptive … [if] the subject line clearly represents what is being sent." Rainwater Decl. Ex. A (new guidance). The plaintiff's bar has capitalized on this new and unexpected interpretation of CEMA to pounce on businesses, like Club Med, that complied with the Attorney General's prior interpretation of CEMA. Club Med is aware of more than 150 CEMA email cases filed since *Brown* on substantially the same grounds.

## C.   Plaintiff's Claims.

Club Med is a company offering all-inclusive luxury vacations and is based in Florida. Dkt. 3; Compl. ¶¶ 11, 40-41. Plaintiff does not allege Club Med sent any emails with subject

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 3

lines misrepresenting the contents of the email, nor does she allege Club Med violated the interpretation of CEMA prevailing before April 2025. Instead, she takes issue with Club Med emails that announced time-limited promotions. *See* Compl. ¶¶ 47-83. Specifically, she alleges that, between May 2025 and December 2025, she received four emails with subject lines containing what she believes were "false statements of fact as to the 'duration or availability of a promotion.'" *Id.* ¶¶ 70-72, 75, 78. She alleges these subject lines were misleading not because the body of the email did not actually offer the promotion, but because Club Med later extended the promotions. *Id.* These email subject lines, by date, are:

1. May 27, 2025: "Last Chance: Memorial Day All-Inclusive Deals[.]"

2. July 28, 2025: "Last Chance! 50% Flash Sale Ends Tonight[.]"

3. September 22, 2025: "Clock's Ticking 50% OFF Ends Tonight[.]"

4. December 1, 2025: "Final Hours to Save on Our Biggest Sale of the Year[.]"

*Id.* ¶ 94 & Ex. A. Plaintiff challenges seven more emails that she does not allege she received. *Id.* ¶ 97 & Ex. A.

Plaintiff speculates that Club Med knew it sent the emails to Washington residents because it is "highly probable that a seller of Club Med's size and sophistications employs … means of tying consumers' email addresses to their physical locations." *Id.* ¶ 92. But Plaintiff does not allege Club Med knew or had reason to know she was a Washington resident when the emails were sent.

Based on these emails, Plaintiff brings claims under CEMA and the CPA. *Id*. ¶¶ 108-24. She seeks to represent a class of "Washington citizens holding an email address to which [Club Med] sent" any of the four emails she alleges she received plus seven others she did not. *Id.* ¶ 97. She seeks an injunction, "the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled," and attorneys' fees. *Id*. ¶¶ 114, 124.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Plaintiffs must plead facts that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Courts should not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Judicial notice permits the Court to consider material outside the pleadings on a Rule 12(b)(6) motion if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Courts routinely take judicial notice of information contained on state government websites. *See United States v. Sanft*, 2021 WL 5283957, at *1 (W.D. Wash. 2021) (collecting cases). "'[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine'" *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D. Cal. 2022) (collecting cases).

### B.    The Commercial Electronic Mail Act.

CEMA is a Washington statute that imposes liability on any person who sends an email "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that[] … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). CEMA applies only to email subject

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

lines; it "does not regulate the body of the e-mail." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (quoting *Heckel*, 122 Wn. App. at 60).

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a CEMA Violation.

Plaintiff does not allege facts to show: (1) she received four of the eleven emails on which she purportedly bases her claims; (2) that the email subject lines were false or misleading; or (3) Club Med knew or had reason to know Plaintiff was a Washington resident when she received any email.

#### 1.    Plaintiff Cannot Sue Over Emails She Never Received.

Plaintiff purports to represent a class to whom Club Med "sent or caused to be sent any email listed in Exhibit A during the Class Period." Compl. ¶ 97. But Plaintiff does not allege she received seven of the eleven emails in Exhibit A. *Compare id.* ¶ 94, *with* Ex. A. She thus cannot assert CEMA claims based on these emails because she can only bring claims for emails she received. *Cf.* RCW 19.190.040(1) (providing for "[d]amages to the recipient").

#### 2.    Plaintiff Does Not Plausibly Allege the Emails Had False or Misleading Subject Lines.

Plaintiff does not plausibly allege the subjects lines of any emails (received or not) are false or misleading because (a) the "last chance" and "final hours" statements are inactionable puffery as a matter of law, and (b) she does not allege facts from which the Court can plausibly infer the sales were not time-limited as advertised when sent.

##### a.    The "Last Chance," "Final Hours," and "Last Days" Statements Are Puffery.

A statement in a subject line is not false or misleading if it is "mere puffery." *Brown*, 4 Wn.3d at 596 ("mere puffery [is] not prohibited by subsection (1)(b)"). "'Mere puffery' has been described as vague or highly subjective terms that cannot be substantiated." *Id.* "[S]ubjective, unverifiable claims about a product or service are 'mere puffery' and cannot give rise to a false advertising claim." *Sauk Suiattle Indian Tribe v. City of Seattle*, 25 Wn. App. 2d 741, 749 (2023).

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 6

Of the four emails Plaintiff alleges receiving, two include no specific promotion end date but instead include vague "[l]ast [c]hance" and "[f]inal [h]ours" language. *See* Compl. ¶ 94 (May 27, 2025 and December 1, 2025 emails). And, of the seven emails Plaintiff includes in the Complaint but does not allege receiving, two additional emails include vague language like "[l]ast [d]ays" and "[l]ast [h]ours." *Id.* Ex. A (July 19, 2024 and February 3, 2025 emails). These subject lines are puffery because phrases like "last chance," "final hours," "last hours" or "last days" are subjective phrases that do not describe how long the sale or the "chance" lasts, and no reasonable consumer would understand "last chance" or "last days" to necessarily mean "ending today." Any firm expiration date in the body of an email, *see id.* ¶¶ 47, 59, 66, 82, does not transform the "final hours" or "last chance" subject line into an actionable misrepresentation under CEMA because "whether a subject line is misleading requires evaluating 'the subject line alone'"—"CEMA 'does not regulate the body of the e-mail.'" *Brown*, 4 Wn.3d at 589 (citation omitted). The Court therefore should dismiss the CEMA claim to the extent it depends on the July 19, 2024, February 3, 2025, May 27, 2025, and December 1, 2025 emails.

### b.    The Subject Lines Were Neither False nor Misleading.

Plaintiff claims the eleven email subject lines at issue were false and misleading because they advertise a specific end date of a promotion, which Club Med subsequently extended. But there is nothing improper about a company deciding to extend the duration of a promotion.

Plaintiff's argument relies on the false premise that companies cannot extend promotions without running afoul of CEMA. That is not the law. As the *Brown* court explained, email subject lines do not "retroactively become[] false (and actionable) under CEMA because market conditions change such that a better sale is later available." *Brown*, 4 Wn.3d at 595. The same is true here. Club Med's subsequent decision to extend the duration of a sale or discount cannot retroactively render the earlier subject lines false or misleading.[3]

---

[3] This principle is applied by courts across various contexts and legal theories when considering whether a statement was false or misleading. *See, e.g.*, *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (explaining in context of fraud claim that plaintiffs must explain "why the disputed statement was untrue or misleading *when made*" (emphasis added, citation omitted)).

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 7

Moreover, Plaintiff fails to allege any facts showing the sale extensions were predetermined and, thus, that the email subject lines were false or misleading when made. And Plaintiff cannot ignore the obvious explanation that Club Med extended the promotions *after* sending the challenged emails in response to subsequently developed business considerations. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (rejecting allegations as "merely possible" to support "impermissible motive"); *see also Iqbal*, 556 U.S. at 678 (allegations "'consistent with' a defendant's liability … 'stop[] short of the line between possibility and plausibility'") (quoting *Twombly*, 550 U.S. at 557). Plaintiff must allege facts to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"When faced with two possible explanations, only one of which can be true and only one of which results in liability[,] something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) (citation modified). The Court "need not accept the conclusion that [Club Med] engaged in unlawful conduct when its actions are in line with lawful 'rational and competitive business strategy.'" *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 845 (9th Cir. 2021) (citations omitted) (dismissing complaint because plaintiff failed to allege facts excluding a competing explanation); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (same).

In short, Plaintiff does not plausibly allege that the alleged sale extensions were predetermined and, thus, that the eleven challenged emails were false or misleading when sent. Without this factual basis, Plaintiff's theory is a *de facto* prohibition on extending any sale, for any reason. This is not the law.

### 3.    Plaintiff Does Not Sufficiently Allege Club Med Knew or Had Reason to Know Plaintiff's Email Address Belonged to a Washington Resident.

Plaintiff's CEMA claim fails for the independent reason that she does not plausibly allege Club Med knew or had reason to know *Plaintiff's* email address belonged to a Washington

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 8

resident. CEMA applies only to emails sent to "an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." RCW 19.190.020(1).[4] Plaintiff speculates that Club Med must *in general* know email recipients' residence based on: (1) the "sheer volume" of its marketing emails; (2) customers' online purchases or self-reported data; (3) tracking IP addresses; (4) purchasing or requesting such data from commercial data brokers; (5) obtaining location information from "identity resolution" services; and (6) requesting information from the registrant of the internet domain names contained in recipient email addresses. *See* Compl. ¶¶ 86-91. None of these bases support her speculation that Club Med had reason to know that *Plaintiff's* email address belonged to a Washington resident.

*First*, Plaintiff makes no attempt to tie her conclusory allegation regarding the "sheer volume" of emails to *her own residency*. *See* Compl. ¶ 86. Plaintiff suggests Club Med sends enough marketing emails that it must know *some* "Washington residents would receive its emails," *id.*, but that still does not explain how Club Med should have known *her* email was tied to a Washington resident, as required to sustain a CEMA claim.

*Second*, Plaintiff speculates Club Med "may obtain location information … when consumers make purchases" on Club Med.com "or otherwise self-report" their residence. Compl. ¶ 87. However, even if this speculation were true, Plaintiff does not allege *she* made any purchase from ClubMed.us or "self-reported" *her* residency.

*Third*, Plaintiff speculates Club Med "may" be able to "obtain location information" of customers based on "the IP addresses of devices used to open Club Med emails." Compl. ¶ 88. However, even if Club Med did obtain the IP addresses of email recipients opening emails, IP addresses are unreliable proxies for geolocation. *See Gutierrez v. Converse Inc*., 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) (explaining IP addresses did not allow defendant "to make a determination as to where the chat users were located"); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. May 21, 2014) (declining to rely solely on plaintiff's

---

[4] Plaintiff does not allege any email at issue was sent from a computer in Washington.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 9

assertions that jurisdiction and venue were appropriate based on the geolocation of defendant's IP address). In any event, Plaintiff does not allege *she* opened any Club Med marketing emails prior to receiving any of the eleven emails she challenges (including the challenged emails themselves) or that *her* IP address would identify her as a Washington resident.

*Finally*, Plaintiff's suspicion that Club Med "may" "purchas[e] consumer data" or "us[e] 'identity resolution' services" to tie email addresses to residence, or request this data from the internet domain registrants is entirely speculative. Compl. ¶¶ 89-91. She provides no factual support for her suppositions that Club Med obtains data from these third-party services or that the information would be available upon Club Med's request. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)). And she has not alleged that these third-party companies or the email domain registrants would identify *her* email address as belonging to a Washington resident.

Because Plaintiff fails to plausibly allege Club Med knew, or had reason to know, that a Washington resident held her email address, her CEMA claim fails.

### B.    Plaintiff Does Not Allege an Injury to Business or Property as Required under the CPA.

#### 1.    Plaintiff Fails to Allege the Requisite Injury to Business or Property.

Plaintiff fails to allege injury to business or property as required to sustain a CPA claim. CEMA does not create a private right of action; instead, recipients of communications that allegedly violate CEMA may pursue relief under the CPA. *Wright v. Lyft, Inc*., 189 Wn.2d 718, 723, 728 (2017). To prevail on a CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to the plaintiff's business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780 (1986).

Certain statutes—including CEMA—create per se CPA violations. *See* RCW 19.190.030. A per se violation, however, establishes only the first three *Hangman Ridge* elements. Indeed,

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

CEMA says "the practices covered by this chapter are matters vitally affecting the public interest" and "[a] violation of this chapter … is an unfair or deceptive act in trade or commerce … for the purpose of applying the consumer protection act," RCW 19.190.030(3)—the first three *Hangman Ridge* elements. A plaintiff must still prove injury to business or property and causation. *Anderson v. Valley Quality Homes, Inc.*, 84 Wn. App. 511, 516 (1997); *see also Race v. Fleetwood Retail Corp. of Wash.*, noted at 116 Wn. App. 1041, 2003 WL 1901274, at *6 (2003) (unpublished) (affirming dismissal of per se CPA claim for lack of injury); *Mielke v. Tacoma RV Ctr., Inc.*, noted at 30 Wn. App. 2d 1038, 2024 WL 1510663, at *5 (2024) (unpublished) (dismissing per se CPA claims for lack of causation). Both the injury and causation elements must arise from the alleged false or misleading practice itself—not merely from the existence of a statutory violation. *Hangman Ridge*, 105 Wn.2d at 785. Thus, even assuming a CEMA violation—and thus a per se CPA violation—Plaintiff must plausibly allege that the subject lines caused injury to her business or property. She does not do so here.

**Montes v. SPARC Group LLC.** The Washington Supreme Court recently clarified the CPA's injury requirement in *Montes,* 586 P.3d at 1001. In *Montes*, the plaintiff purchased leggings for $6 after the retailer advertised that they were discounted from $12.50. Even though the price comparison was allegedly false—i.e., the leggings had never been sold for $12.50—the Court held that a plaintiff does not suffer injury to business or property when she "purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history." *Id*. at 1002, 1004–05. The CPA requires an objective economic loss; "disappointed expectations" resulting from a misleading representation are insufficient. *Id*.

Under *Montes*, Plaintiff has failed to alleged the required injury to business or property. She alleges that Club Med sends promotional emails with subject lines suggesting that discounts are available for a "Flash Sale," "Last Day," or "Last Chance," only to later extend a promotion. Compl. ¶¶ 47-82. But Plaintiff alleges only that she received emails with misleading subject lines—not that she opened the emails, clicked on them, purchased any product, or spent any money. *Id.* ¶¶ 93-94. Even if she had purchased a vacation deal advertised in the emails, *Montes*

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 11

forecloses a CPA injury based solely on the alleged misrepresentation about the duration or urgency of a promotion. A consumer who buys a product at the advertised price has received exactly what she bargained for and has not suffered an economic loss. Because the alleged deception concerns only the purported duration of promotional pricing—and Plaintiff alleges no economic loss—her claim fails under *Montes*.

*Wright v. Lyft.* Plaintiff attempts to avoid this conclusion by invoking *Wright*, 189 Wn.2d 718, asserting that a CEMA violation automatically establishes all five elements of a CPA claim. That is incorrect. *Wright* involved CEMA's prohibition on sending commercial texts without consent under RCW 19.190.060—not CEMA's prohibition on sending emails with misleading subject lines under RCW 19.190.030, at issue here. The Washington Supreme Court held that an individual who has received a commercial text message without consent has automatically established all five elements of a CPA violation, including injury to business or property because unsolicited commercial text messages impose concrete economic harms: they consume limited device memory, use paid data services, and interrupt the receipt of desired communications. *Id.* at 731. The Court's reasoning rested on legislative findings specific to text messages, including that recipients "pay for use when a message is received," that the limited memory of mobile devices can be exhausted, and receiving a text message interrupts recipients' receipt of welcomed messages. *Id.* at 730 (citing RCW 19.190.060). These harms arise directly from the receipt of the text message itself, regardless of the message's content—unlike CEMA email provisions.

The statutory scheme confirms the distinction. The text-message provisions of CEMA are consent-based: sending commercial text messages without consent violates the statute regardless of what the message says. RCW 19.190.060; RCW 19.190.070. The email subject-line provision is different. It is content-based, not consent-based. CEMA does not prohibit sending commercial emails generally; it prohibits sending emails with false or misleading subject lines. RCW 19.190.020(1)(b). Emails with a truthful subject line do not violate the statute. Accordingly, any CPA injury tied to email must stem from the deception in the subject line, not from the mere

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

receipt of the email.[5] Inbox storage, bandwidth consumption, and interruption cannot supply that injury to business or property because they occur whether the subject line is truthful or deceptive. A truthful subject line occupies the same inbox space and consumes the same bandwidth as a deceptive one. Alleged falsity adds nothing. Any time spent reviewing or deleting the email flows from receipt of the email itself—not from whether the subject line is truthful or misleading. As such, *Wright's* reasoning does not apply to CEMA's email provision.

**Harmonizing *Wright* and *Montes.*** Read together, *Wright* and *Montes* reinforce the CPA's independent injury requirement. In *Wright*, the statutory violation itself caused concrete economic harm because unsolicited text messages impose costs on recipients upon receipt. 189 Wn.2d at 731. In contrast, misleading email subject lines do not impose any incremental economic harm. Under *Montes*, deception alone—particularly deception about the magnitude or duration of a sale—does not constitute injury to business or property absent an objective economic loss. 586 P.3d at 1001–02, 1004–05. Plaintiff's contrary reading of *Wright* would create an untenable result. A consumer who received an email stating "T-Shirts 50% Off" when the shirts were not actually discounted could recover under the CPA via CEMA, even though the identical misrepresentation asserted directly under the CPA would fail under *Montes* for lack of injury. Nothing in *Wright* suggests the Court intended such a result.

The better reading is straightforward: *Montes* articulates the first principle that a CPA violation—even a per se one—requires injury to business or property caused by the violation. *Wright* represents a limited holding specific to CEMA's text message provision, where the statutory violation itself produces the injury identified by the legislature. This interpretation harmonizes *Wright* with *Montes* and preserves the CPA's statutory requirement of injury to

---

[5] The *Brown* Court's statement that "CEMA does not require a showing of injury" because the injury is receiving the offending email was dicta and exceeded the scope of the certified question which addressed only whether RCW 19.190.020(1)(b) prohibits emails with a subject line containing "*any* false or misleading information" or whether the prohibition is limited to subject lines with "'false or misleading information *about the commercial nature of the email message*[.]'" *Brown*, 4 Wn.3d at 585–86, 592 (citation omitted).

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

business or property. Because Plaintiff alleges no injury to business or property caused by the alleged subject-line misrepresentations—and none could arise from the conduct alleged—Plaintiff fails to state a claim.

### 2. An Interpretation of CEMA that Eliminates the Injury Element Would Impermissibly Rewrite the CPA.

It is well established that a claim under the CPA requires a plaintiff to demonstrate injury to business or property. *Montes*, 586 P.3d at 1005. Eliminating this requirement—whether through judicial interpretation or through implication from subsequent legislative action—would impermissibly rewrite the statute. Courts may not dispense with a statutory element in that manner without effectively altering the CPA itself. To the extent Plaintiff argues that the injury-to-business-or-property requirement has been eliminated either by judicial decision or by implication from later legislative enactments, both theories fail.

### a. Courts cannot eliminate the CPA's injury to business or property requirement.

Washington's separation-of-powers doctrine arises from the Washington Constitution's division of legislative and judicial authority. *State v. Wadsworth*, 139 Wn.2d 724, 735 (2000); Const. art. II, § 1; art. IV, § 1. Courts may interpret statutes, but they may not rewrite them or invade legislative prerogatives. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 506 (2009); *Hanson v. Carmona*, 1 Wn.3d 362, 371 (2023).

Club Med's read of *Wright* not only harmonizes it with *Montes*, but also avoids the separation-of-powers issue that arises by expanding *Wright* to CEMA's email provision. RCW 19.86.090 allows a claim under the CPA only if a plaintiff is "injured in his or her business or property." Reading *Wright* to eliminate this requirement for CEMA email subject line claims—as Plaintiff suggests—would not be statutory interpretation; it would effectively amend the statute,[6] raising separation-of-powers concerns.

---

[6] If the legislature intended to remove the CPA injury requirement from CEMA, it knew how to do so. In 2005, the legislature amended CEMA to add protections against phishing and, for the first time, created a direct cause of action within CEMA itself: "A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations, and to seek up to five hundred dollars per violation, or actual damages, whichever is greater." RCW 19.190.090(1). The *Wright* court observed that this amendment "shows the legislature knew how to institute a cause of action and how to circumscribe its scope," and that the legislature's omission of an equivalent

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 14

The same concern is not present with CEMA's texting provision. As *Wright* explained, the decision did not eliminate the requirement that a plaintiff suffer injury to "business or property." Rather, it recognized that the legislature structured CEMA's text-message prohibition so that the injury to business or property occurs upon receipt of the prohibited text message itself. In that context, the statutory violation inherently constitutes the required injury. The email subject-line provision is different. Liability under that provision turns on deception, not the mere receipt of a message, and thus the statutory violation does not itself establish injury to business or property. Nothing in CEMA suggests that RCW 19.190.040's damages floor eliminates the independent injury requirement imposed by RCW 19.86.090 for plaintiffs proceeding under the CPA. Reading *Wright* to supply such a rule would effectively rewrite the statute by judicial construction, intruding on the legislature's role as Washington's law-making body, and invalidating the Court's decision in *Wright*.

> **b.      The legislature cannot eliminate the CPA's injury to business or property requirement by implication.**

Article II, Section 37 of the Washington Constitution provides that statutes may not amend existing law by implication: "[N]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Const. art. II, §37. A statute is valid under Article II, Section 37 only if it "(1) is a complete act and (2) does not render erroneous a straightforward determination of … existing statutes." *Assoc. Gen. Contractors of Wash. v. State*, 2 Wn.3d 846, 853–54 (2024) (citation modified). "One way that a new statute might render an old statute erroneous is if the new statute conflicts with existing law *or alters criteria established by existing law*." *Id.* at 865–66 (emphasis added). "[A] complete act, especially an act that adopts other statutes by reference, may still violate article II, section 37 because a complete act can still render existing statutes erroneous by not informing readers how the statute is impacting or modifying a straightforward determination of the scope of rights and duties created by those other statutes." *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195

---

provision for text-message violations was meaningful: "[o]missions are deemed to be exclusions." *Wright*, 189 Wn.2d at 727.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Wn.2d 198, 210 (2020). Section 37 thus ensures "that legislators are aware of the nature and content of the law which is being amended and the effect of the amendment upon it" and that they "disclose the act's impact on existing laws." *Amalgamated Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 246 (2000).

For this reason, the Washington Supreme Court has repeatedly invalidated statutes that violate Section 37. *See, e.g.*, *El Centro de la Raza v. State*, 192 Wn.2d 103, 131–32 (2018) (provision restricting bargaining rights of charter school employees, without identifying how it related to existing statutes, unconstitutional under Section 37); *Amalgamated Transit,* 142 Wn.2d at 254 (section of initiative unconstitutional where it affected, but failed to set forth, existing related statute); *Wash. Educ. Ass'n v. State*, 93 Wn.2d 37, 41 (1980) (appropriations act limiting broad spending powers under other statutes unconstitutional where it failed to set forth those other statutes).

If interpreted as Plaintiff suggests, CEMA also violates these core constitutional principles. Assuming for the purposes of this motion that CEMA is a "complete act" satisfying the first prong, it fails the second prong because it renders a "straightforward" reading of the CPA "erroneous." As the Supreme Court explained in *Wright*, "the plain language indicates it was the legislature's intent for CEMA violations to be brought under the CPA." *Wright*, 189 Wn.2d at 726–28. A CEMA claim therefore proceeds through the CPA's "civil action" provision, which permits a person "who is injured in his or her business or property" to bring suit. RCW 19.86.090. Under Plaintiff's interpretation of CEMA, the statute effectively eliminates this requirement and thereby obscures this "straightforward determination." *Black*, 195 Wn.2d at 210.

CEMA's damages provision removes those requirements from the CPA for CEMA violations "without explicitly showing how the Act relates to statutes it amends." *El Centro de la Raza*, 192 Wn.2d at 131–32 (citation modified). Article II, section 37 prohibits precisely that result. The decision in *Montes* renders this conclusion inescapable. *Montes* makes clear that a CPA plaintiff must allege and ultimately prove objective economic loss to "sue to enforce the

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Washington Consumer Protection Act (CPA)." *Montes*, 2026 WL 900481, at *1 (citation omitted). Consequently, because CEMA allows a consumer to bring a civil action for damages without proof of actual economic loss, it unconstitutionally "alters [the] criteria" of the CPA. *Assoc. Gen. Contractors*, 2 Wn.3d at 865–66.

If a statute violates Article II, Section 37, "[i]nvalidation of the unconstitutional enactment is the proper remedy." *See Amalgamated Transit*, 142 Wn.2d at 256; *see also Wash. Educ. Ass'n*, 93 Wn.2d at 41 ("Because RCW 28A.58.100(1) was not fully set forth in the appropriations act which purported to amend it, the offending limitation on the powers of school districts is unconstitutional and of no effect."); *Boeing Co. v. State*, 74 Wn.2d 82, 88 (1968) ("[A]n invalid statute is a nullity. It is as inoperative as if it had never been passed."). But the Court can limit the impact by "severing any 'problematic portions while leaving the remainder intact.'" *See, e.g.*, *State v. Carter*, 3 Wn.3d 198, 213 (2024) (citation omitted). Here, if the Court concludes that CEMA email violations automatically establish CPA injury and causation, the Court could sever RCW 19.190.040, the offending provision.

### C.   Applying *Brown* Retroactively Would Violate Due Process Because Club Med Lacked Fair Notice That Its Conduct Was Unlawful.[7]

Plaintiff seeks to impose liability on Club Med based on a judicial interpretation of CEMA that did not exist at the time of the challenged conduct. When Club Med sent half of the relevant emails, both the courts and the Washington Attorney General had interpreted CEMA to prohibit only email subject lines that concealed the commercial nature of the email. *See supra* § II.A. It was not until April 2025 that the Washington State Supreme Court's decision in *Brown* announced the new interpretation on which Plaintiff relies. Until then, Club Med lacked notice

---

[7] The Washington Supreme Court's decision in *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 276 (2009), raises a common-law presumption that the new rule announced in the April 2025 *Brown* decision applies retroactively. But in deciding to apply *Brown* retroactively, the Washington Supreme Court could not consider any constitutional arguments regarding due process because those questions were not certified to it. *See, e.g.*, *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 470 (2024) (declining to consider constitutional issues of notice and vagueness because "[t]he District Court did not certify to this court the constitutional issues Amazon now advances"). Accordingly, the Washington Supreme Court could not consider the potential due process implications of applying *Brown*'s new rule to punish with massive statutory damages emails that were in line with existing guidance when sent.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 17

that CEMA could prohibit the conduct Plaintiff now challenges. Due process requires that Club Med not be punished for complying with the then-authoritative interpretations of CEMA.

The Due Process Clause prohibits imposing liability without first giving parties fair notice of allegedly unlawful behavior. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice … of the conduct that will subject him to punishment . . . ."). In other words, a party may not be held "accountable for actions undertaken prior to the date on which it received fair notice." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 768–70 (2008). To provide fair notice, "a statute or regulation must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that she may act accordingly.'" *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008) (citation omitted).

In *AMC Entertainment*, the Ninth Circuit rejected retroactive enforcement of a new interpretation of a regulation where, previously, different courts and the administrative agency responsible for enforcing the regulation read the regulation differently. The court explained that the plain language of the provision "did not even provide our colleagues, armed with exceptional legal training in parsing statutory language, a 'reasonable opportunity to know what is prohibited'—let alone those of 'ordinary intelligence.'" 549 F.3d at 768–69 (citation omitted). The court then declined "to hold that a person of ordinary intelligence should have known … that [the provision] was susceptible only to the interpretation the government now champions." *Id.* at 768.

Here, the Washington Attorney General issued guidance to help businesses understand what conduct was proscribed by RCW 19.190.020, explaining that "the easiest way[] to tell if an email violates Washington's spam statute is to take a look at the subject line of the email and compare it to the text of the message." Rainwater Decl. Exs. A & B. Courts interpreted CEMA in line with this guidance. *See, e.g., Chen,* 655 F. Supp. 3d at 1092 (finding that "CEMA's statutory text combined with the statute's legislative history and Washington caselaw supports [the]

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 18

interpretation that subsection (b) in CEMA … specifically prohibits false and misleading information as to the nature of the email, i.e. that the email is an advertisement"). As explained in *Chen,* the legislative history of CEMA further supported the prevailing understanding that it was intended to "prohibit[] emails that disguised the fact that they were advertisements." *Id.*

That interpretation persisted until April 2025, when the Washington Supreme Court construed the same language to mean that the inquiry into whether a subject line was misleading required "evaluating 'the subject line alone' because CEMA 'does not regulate the body of the e-mail, only the subject line.'" *Brown*, 4 Wn.3d at 589 (citation omitted).

In light of the prior authority, an individual of "ordinary intelligence" could not have known that CEMA prohibited the conduct proscribed in *Brown* before the ruling. The decision in *Brown* represented a meaningful change in both plaintiffs' and defendants' (and the Attorney General's Office's) understanding of what was prohibited by CEMA, which is underscored by the wave of over 120 CEMA cases filed since April 2025.[8]

Applying *Brown* retrospectively to punish Club Med for emails that were in line with the then-prevailing Attorney General's guidance, the existing case law, and the legislative history of CEMA would deny Club Med's right to due process. *See Gore*, 517 U.S. at 574. There is no reasonable argument that Club Med should have known prior to April 2025 that it could not rely on those sources for guidance regarding what conduct was unlawful. Plaintiff should therefore be barred from alleging CEMA claims based on pre-*Brown* conduct that complied with the prevailing understanding and interpretation of CEMA.

**D.      Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.**

Finally, because Plaintiff's CEMA claim fails, the Court should dismiss her CPA claim. Plaintiff does not allege any of the elements of an independent CPA claim; instead, the CPA claim is predicated exclusively on the alleged CEMA violation. *See* Compl. ¶¶ 115-24; *Chen*,

---

[8] Moreover, at least one justice of the Washington Supreme Court found Club Med's interpretation to be so compelling that she refused to join the majority's decision in *Brown*. *See Brown,* 4 Wn.3d at 602 (Madsen, J., dissenting) (finding the "majority's interpretation of the statute *conceivable*," but not "*reasonable*, particularly where the statutory context weighs strongly in favor of an alternative interpretation").

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

655 F. Supp. 3d at 1093 (CPA claim properly dismissed where plaintiff failed to state CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 ("Because [plaintiff's] CEMA claims fail as a matter of law, her CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed.").

### E.    Actual and Treble Damages Are Not Available.

CEMA provides for statutory damages or actual damages, whichever is greater. RCW 19.190.040(1). The CPA provides for treble damages "not to exceed three times the actual damages sustained." RCW 19.86.090. Although Plaintiff seeks both statutory and actual damages (trebled), she fails to allege any facts suggesting she sustained any actual damages. *See* Compl. ¶ 93 (alleging the emails violated Plaintiff's "right to be free from such annoyance and harassment" without explaining when, how, or why she experienced annoyance or harassment). Accordingly, any claim for actual damages should be dismissed. *See Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at *7 (W.D. Wash. Jan. 13, 2025) ("[The complaint] is nothing more than a 'formulaic recitation' of the elements of a CPA [claim] devoid of any factual fodder. Its failure to . . . allege how it was injured . . . is fatal to [the] CPA claim."), *aff'd*, 2026 WL 753173 (9th Cir. Mar. 17, 2026); *see also Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (similar).

Plaintiff's failure to plausibly allege any actual damages also precludes treble damages. "The case law is clear that treble damages may only be based upon actual damages." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660 (1983). The Court should also dismiss Plaintiff's claim for treble damages.

### V.    CONCLUSION

For the above reasons, the Court should dismiss the Complaint with prejudice, as Plaintiff cannot cure the fundamental defects in her claims. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 20

DATED this 26th day of June, 2026.


DAVIS WRIGHT TREMAINE LLP


By: s/ *Lauren B. Rainwater*
    Lauren B. Rainwater, WSBA #43625
    Rachel Herd, WSBA #50339
    Quincy Rush, WSBA #62834
    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610
    Tel: 206.622.3150
    E-mail: laurenrainwater@dwt.com
    E-mail: rachelherd@dwt.com
    E-mail: quincyrush@dwt.com


    *Attorneys for Defendant Club Med Sales, Inc.*

    I certify that this memorandum contains 7,478 words, in compliance with the Local Civil Rules.

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2026, I caused the a true and correct copy of the foregoing to be served on the following as indicated below:

Samuel J. Strauss, WSBA #46971
Raina C. Borrelli, *Pro Hac Vice*
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
E-mail: sam@straussborrelli.com
E-mail: raina@straussborrelli.com

Lynn A. Toops, *Pro Hac Vice*
Natalie A. Lyons, *Pro Hac Vice*
Ian R. Bensberg, *Pro Hac Vice*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
E-mail: ltoops@cohenmalad.com
E-mail: nlyons@cohenmalad.com
E-mail: ibensberg@cohenmalad.com

J. Gerard Stranch, IV, *Pro Hac Vice Forthcoming*
Michael C. Tackeff, *Pro Hac Vice Forthcoming*
Andrew K. Murray, *Pro Hac Vice Forthcoming*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
E-mail: gstranch@stranchlaw.com
E-mail: mtackeff@stranchlaw.com
E-mail: amurray@stranchlaw.com

*Via ECF*

*Attorneys for Plaintiff*

DATED this 26th day of June, 2026.

s/ *Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625

MOTION TO DISMISS COMPLAINT
(2:26-cv-01397-JHC) – 22